GEORGE HILTON *et al. v.* JOHN ANDERSON *et al.**

*(Nashville.* December Term, 1923.)

1. **COURTS.** Former decision holding land entries special not disturbed on principle of stare decisis.

Where land entries have been adjudicated special in a case not dissimilar to facts of present case, although not *res adjudicata*, former decision will not be disturbed on principle of *stare de-. cisis.* (*Post, p.* 626.)

2. **PUBLIC LANDS.** Grant on special entry carries date of entry.

Grants based on special entry relate back to entry and carry its date. (*Post, pp.* 626-629.)

3. **PUBLIC LANDS.** Entry held special; ''Notoriety.''

Entry describing land as on south side of south prong of creek beginning at point of bluff about half mile below line of another entry, one line of which fixed beginning point on white oak at named distance from old improvement, first entry *held* special, as "notoriety," means that object was known by name specified to persons conversant with section generally. (*Post, pp.* 626-629.)

Case cited and approved: Simms v. Dickson, 3 Tenn., 137.

Case cited and distinguished: Burns v. Greaves, 3 Tenn., 75.

4. **PUBLIC LANDS.** No title acquired by hiatus in acts extending time for obtaining grants.

Where complainants' entries and grants excluded prior claims, and defendants' earlier entry was special, no title vested in complainants by defendants' failure to obtain grant until after *hiatus* between Acts 1839-40, chapter 12, giving two years to procure agents and Acts 1841-42, chapter 15, extending time. (*Post, pp.* 630-633.)

Acts cited and construed: Acts 1839-40, ch. 12; Acts 1841-42, ch. 15.

Cases cited and distinguished: Bleidorn v. Pilot Mountain C. & M. Co., 89 Tenn., 205; Wright v. Hurst, 122 Tenn., 666.

Hilton v. Anderson.

5. **BANKRUPTCY.** Report of assignee held without force or effect.

Where decree in bankruptcy was made February 11, 1843, *held* that no force or effect could be attributed to assignee's report evidently filed in 1881 after the case had passed out of the court's jurisdiction, and on which decree purporting to authorize assignee's deed was based. (*Post, pp.* 633, 634.)

6. **PUBLIC LANDS.** Statutory hiatus held to vest title in junior enterer.

The *hiatus* between Acts 1839-40, chapter 12, giving enterers two years to procure grants, and Act Nov. 30, 1841 (Acts 1841-42, chapter 15) extending the time, resulted in title vesting in junior enterer, whose entry contained no exclusion cause, and who had obtained a grant prior to the *hiatus*. (*Post, pp.* 634-637.)

Cases cited and approved: William v. Throop, 30 Tenn., 265; Blevins v. Crew, 35 Tenn., 152; Sheafer v. Mitchell, 109 Tenn., 181.

Cases cited and distinguished: Henegar v. Matthews, 88 Tenn., 132; Williamson v. Throop, 30 Tenn., 267.

7. **EJECTMENT.** Recovery only because of complainants' ownership, not because defendant does not own land.

Where in ejectment complainants did not deraign under grants which by reason of *hiatus* between defendants' entry and grant were superior to defendants, they could not take advantage of such fact, their right of recovery depending on their ownership not on defendants' lack of ownership. (*Post, p.* 637.)

8. **JUDGMENT.** Complainants cannot recover because in former litigation their grant was declared superior to one superior to defendants.

Where, by reason of statutory *hiatus* between defendants' entry and grant, junior grant to P. carried title, but complainants had no title under grants to P., they cannot recover against defendants because, in litigation between them and those holding under

Hilton v. Anderson.

P., it was adjudged that their grant was superior to grant to P. (*Post, pp.* 637, 638.)

### FROM MORGAN.

*Headnote 1. Courts, 15 C. J., section 306.   2.   Public Lands, 32 Cyc, p. 1098.   3.   Public Lands, 32 Cyc, p. 1098.   4.   Public Lands, 32 Cyc, p. 1098.   5.   Bankruptcy, 7 C. J., section 384 (1925 anno).   6.   Public Lands, 32 Cyc. p. 1098.   7.   Ejectment, 19 C. J., section 14. 8.   Judgments, 23 Cyc, p. 1287.

Appeal from the Chancery Court of Morgan County.— Hon. W. R. Officer, Chancellor.

J. A. Monroe and W. Z. Stricklin, for Hilton and others.

Webb & Baker and Davis & Jones, for Anderson and others.

Mr. L. D. Smith, Special Justice, delivered the opinion of the Court.

This is an action of ejectment. The land in dispute is that described in the title papers under which the defendants claim the land. It may be conveniently referred to as entry No. 1246, containing some 300 acres.

While there is a dispute in the record as to the location of the land described in complainants' title papers, for the purpose of this opinion it may be assumed: (1)

That the title papers of the complainants based on entry No. 2151, covers and includes a small portion of the north end of the disputed land; (2) that the title papers of the complainants based on entry No. 2052 embrace within their general boundaries the larger part of the north end of the disputed land, embracing .that portion covered by entry No. 2151; (3) and that complainants' title papers based on entry No. 2052 embrace within their boundaries a portion of the south end of the disputed land, the north boundary of entry No. 2052 being the south line of entry No. 2051 and passes through the defendants' entry No. 1246. The title papers referred to cover and embrace all the land in dispute.

The complainants' chain of title, under the grants based upon entries Nos. 2050 and 2052 is unchallenged by the defendants, but it is challenged at least in one link in the chain of title based upon entry No. 2151, which, as stated, covers only a portion of the land at the north end of the disputed boundary. The defendants' chain of title from the grant based on entry No. 1246 is likewise unchallenged.

We shall first consider the complainants' title under entries Nos. 2050 and 2052. Entry No. 2050 was made August 16, 1836. The grant based thereon, 22310, issued December 26, 1838. Entry No. 2052 was made August 16, 1836. The grant based thereon, 22313, issued December 27, 1838. Defendant's entry No. 1246 was made May 29, 1830. The grant based thereon issued November 24, 1847.

It is thus seen that complainants have the elder grant

but the younger entry, while the defendants have the elder entry but the younger grant.

Very much is said in the briefs and argument as to the specialty of complainants' entries. This question is entirely immaterial in determining the strength of the respective titles, since, unless defendants' entry is special and the grant based thereon may relate to the date thereof the complainants' title is superior, other questions aside, without reference to the entries upon which complainants' grants are based, while, if defendants' entry is special and the grant thereon relates to the date thereof the defendants' title is superior, even though complainants' entries be special.

But as the specialty of entries Nos. 2050 and 2052 may reflect upon other questions, it should be stated: These very entries were before this court in 1905 and again in 1906, and they were held to be special by a decree which affirmed the court of chancery appeals, for the reasons given in the opinion of Mr. Justice MCALISTER, and of Mr. Justice BARTON of the court of chancery appeals, appearing in the record of this case. These entries having been adjudicated to be special in that case under facts not dissimilar to those appearing here, although not *res adjudicata*, the decision will not now be disturbed upon the principle of *stare decisis*.

It is therefore necessary to determine whether the defendants' entry No. 1246 is special so that the grant based thereon may relate to the entry and carry its date. The entry reads as follows:

"Thomas Staples and Levi Trewhitt enters 300 acres of

land in said county, on the waters of Cooks creek on the south side of the south prong of said creek; beginning on the point of a bluff below the mouth of a branch that runs into the south prong of said creek about half a mile below the lower line of their entry No. 1245; and then south; and then west; and then north and to the beginning."

Reference is made in the above entry to another entry No. 1245 by the same parties. That entry No. 1245 reads as follows:

"Thomas Staples and Levi Trewhitt enters 300 acres of land in said county on the waters of Cooks creek and on the path that leads from Daniel S. Lavendars to Cook's; beginning on a white oak about a quarter of a mile east of an old improvement called Ferguson's Cabins; thence north; and thence west; thence south; thence east; thence north to the beginning."

Upon the same principles which made entries Nos. 2050 and 2052 special, we consider that No. 1246 is also special. It is shown that the entry as located on the grounds conforms to the calls of the entry. The call which gives it a specific location is:

"Beginning on the point of a bluff below the mouth of a branch that runs into the south prong of said creek about half a mile below the lower line of their entry No. 1245."

The beginning is on the point of a bluff, the point of the bluff is below the mouth of the branch that runs into the south prong of the creek. These are natural and permanent objects, and in the absence of a showing that there existed more than one branch emptying into the

Hilton v. Anderson.

south prong of the creek, the above calls would definitely locate the land, and the natural monuments called for would afford the necessary notoriety. The location is made more specific by locating the mouth of the branch at a half a mile below the lower line of entry No. 1245. The word "about" in a call of this sort was held in the case of *Schoetz* v. *Cumberland Coal & Coke Co.,* which was the case in which the complainants' entries were held to be special, to mean "at." The lines of No. 1245 are made sufficiently definite and notorious by placing the land on the waters of Cooks creek and on the path that leads from Lavendars to Cooks, and fixing the beginning point on a white oak about a quarter of a mile east of an old improvement. Both the path that leads from Lavendars to Cooks and the improvement called Ferguson's Cabins are shown to be well-known places, and the beginning on a white oak a specific distance from this noted place fixes definitely the location of the land.

The call which it was held made the entry special in *Schoetz* v. *Cumberland Coal & Coke Co.* was:

"Beginning at a black oak on the road leading from George Hoonce's to Nimrod Myatt's."

In *Burns* v. *Greaves,* Cooke, 75, we find the principle stated that a call in an entry may be both directory and locative; that the whole entry must be considered together and when considered as a whole if a subsequent locater could reasonably ascertain the location of the entry it is special. It was said:

"The great object to be attained by an entry, is reasonable notice to subsequent enterers, [as to] what land has been previously appropriated."

This principle was applied in *Simms* v. *Dickson*, Cooke, 137 Fed. Cas. No. 12869, to an entry very similar to the one now under consideration. The entry there was for 3,000 acres of land lying on the north side of Duck river on the first creek above Spring creek beginning on the river three quarters of a mile below said creek. These were held to be locative calls and sufficient to establish the beginning corner of the grant with reasonable certainty. It was in this case that the court held that a grant calling to begin "about" a mile from a given point meant that the beginning should be precisely at the end of a mile.

The calls for these streams and the location of the beginning point upon a fixed object, the location of which is definitely described by reference to the streams, afford to the entry sufficient notoriety. By notoriety is not meant that the object is known to all the world; the idea is that the object was known by the name specified in the entry to persons generally who lived or were conversant with that section of the country where the objects existed. The circumstances in this case together with the calls of the entry themselves are sufficient to establish the notoriety of these streams to make this entry special. The contention of the complainants is that the proof shows that there was more than one place in that neighborhood called Ferguson's Cabins, but it appears that only the Ferguson's Cabins conforming to the location claimed by the defendants answers the other calls of the entry.

We conclude, therefore, that the defendants' entry No. 1246 is a special entry, and, aside from other objections interposed by the complainants, is entitled to relate to the entry.

It is claimed by the complainants that the defendants' said entry was rendered void by chapter 12 of the Acts of 1839-40 by which enterers of land were given only two years after November 28, 1839, in which to procure grants, and, if grants be not obtained within that time, "such entries shall be null and void as to subsequent enterers." The fact appears that no grant had been issued on the defendants' entry at the expiration of the time specified in the act of 1839. However, on November 30, 1841, two days after the time expired under the act of 1839, another act was passed, being chapter 15, extending the time for procuring grants upon entries for two more years and by subsequent extension acts the right to obtain grants was in effect when the defendants' grant was obtained. But the complainants' contention is that, inasmuch as there was at least one whole day in which no grant could be procured on the defendants' entry, the entry stood void; that the complainants' grants, which had been issued before this hiatus, immediately became effective and vested the State's title thereunder in the grantee, which could not be defeated by a subsequent extension act.

This contention of the complainants might be conceded without their having the title to the land in controversy under the grants based upon entries Nos. 2050 and 2052, if we accept the defendants' contention that the complainants' said grants did not in fact include the land in dispute.

It is true that the land in dispute, described in the defendants' entry and grant is within the outside boundary of the complainants' said grant, but entry No. 2050 ex-

cludes all prior claims, and the grant issued thereon excludes 3,400 acres of interfering claims, entry No. 2052 excludes 3,400 acres of prior legal claims, and the grant issued thereon 3,600 acres of prior claims. Regardless of the *hiatus* of 1841, the defendants' entry being special, it was at the time of the complainants' entries and grants a prior and legal claim, and being such was excluded by the very words of the entry and grant, and the grant did not even purport to convey the same. *Bleidorn* v. *Pilot Mountain C. & M. Co.*, 89 Tenn., 205, 15 S. W., 737. This being the case, there was no vested title brought about by the *hiatus* in favor of said grants based on entries Nos. 2050 and 2052, and nothing to prevent the operation of the extension act in favor of the defendants' entry passed on November 30, 1841.

This result is conceded by the complainants in their brief wherein it is said:

"Should entry No. 1246 be held to be special, the land covered by it would probably be excluded from the Eastland grants."

And for this reason the complainants seek to rely, in order to establish their title to the land in controversy, upon what is known in the record as the Peet grants, to-wit, 22289, based on entry No. 2151 and grant No. 22291, based on entry No. 2152.

We might very well dispose of any claims of the complainants under grant No. 22289, based on entry No. 2151, which covers a small portion of the north end of the land in controversy, upon and for the same reason that we hold entries Nos. 2050 and 2052 as inferior to entry No. 1246, since we find that this Peet grant excludes all prior

claims, and by reason thereof did not purport to grant the land embraced in entry No. 1246; it being a special entry and therefore a prior claim. Hence the *hiatus* could not operate to vest a title in the holder of the Peet grant to the land in dispute.

It is argued that the exclusion clause in entry No. 2151 is void, because as a matter of fact it appears that all of the land embraced therein had been previously entered, and it was covered entirely by older and prior claims. Thus it is said that the exclusion clause is void upon the principle stated by this court in *Wright* v. *Hurst,* 122 Tenn., 666, 127 S. W., 701. The question in that case was whether a certain grant constituted color of title by reason of an exclusion clause in their entry, where it appeared that the entire entry was covered by older grants, and it was contended that the rule in the Bliedorn Case applied and destroyed the grants as color of title. This court said:

"Certainly that case cannot be held as authority for the contention that these words of exclusion have the legal effect of destroying as color of title the grant of about 2,800 acres, because this same land is covered entirely by older grants."

We might well apply this rule in a contest between the Eastland grants, based on entries Nos. 2050 and 2052, and the Peet grant, if we accept the argument that such an exclusion clause is void; still this rule would not apply to a small prior legal claim which would be excluded in harmony with the exclusion clause and would not be inconsistent therewith. It is quite clear, we think, that the rule in the Williams Case does not apply when it is sought to

establish title to this small prior legal claim under a grant which clearly excludes it.

There is still another reason why the complainants cannot assert title under the Peet grant. In order for the complainants to connect with the Peet grant, they must depend upon a deed executed by an assignee in bankruptcy of Stephan B. Peet, the original grantee. This deed was executed in 1881. The decree in bankruptcy purporting to authorize this deed was made January 4, 1842, some 40 years before the deed was executed, and many years after the bankruptcy act had been repealed. The bankruptcy proceedings are in the record, from which we find: That one Stephen B. Peet on December- 21, 1842, filed a petition in bankruptcy and on February 11, 1843, was decreed a bankrupt. The schedule filed by the bankrupt, which he alleged contained a full list of all his property, makes no reference whatever to his ownership of any lands in Tennessee. There appears in the record a copy of an order of the District Court of New York in this bankruptcy proceedings, carrying the indorsement of "decree dated 11th of February, 1843," wherein is found a report of the general assignee in bankruptcy showing the ownership of entry No. 2151, grant 22289, as being a part of the bankrupt's estate. It will be observed that in this report it is said: "In making examination of the title of these lands it appears that many portions of them were brought by the bankrupt over 40 years ago." This report bears the date of June 29, 1858, but it is marked "Filed July 14, 1881." If we concede the date of June, 1858, then the reference which we have just quoted from the report that the bankrupt had bought the lands

over 40 years ago, we would have it referring to a purchase in 1818, whereas the grant itself did not issue until 1838. Furthermore, as we have observed, the report appears to have been filed in July, 1881. It is manifest from an inspection of the copy of this order that no such report was filed in that proceeding. It was evidently filed in 1881 at a time when it cannot be supposed that there existed any jurisdiction in the federal court. With these conflicting dates and in view of the great lapse of time, no force or effect can be attributed thereto  The report was evidently gotten up many years after the case had passed out of the jurisdiction of the court, and at a time when there was no authority in law for the making of any such report, and it is alone upon that authority that the deed under which the complainants claim title to the land is predicated.

Complainants claim title to that part of the land in dispute lying south of the south boundary line of entry No. 2151 under entry No. 2152 and the grant issued to Stephen B. Peet based thereon, to-wit, 22291. The contention of the complainants is that by virtue of the *hiatus* between November 28 and November 30, 1841, this Peet grant became effective and the title from the State vested thereunder. This Peet grant, based on entry No. 2152, contained no exclusion clause, and therefore it became the better title to the land in dispute covered by it, if the contention be sound that the defendants' entry falls into the chasm between the expiration of the act of 1839 and the commencement of the extension act of 1841. This particular contention of the complainants is sustained by our authorities. It was held by this court in *Henegar* v. *Matthews,* 88 Tenn., 132, 14 S. W., 554, that the existence

of a *hiatus* would not have the effect to revive a younger entry existing prior to the occurring of the *hiatus,* the reason being that an entry was but the unauthorized act of the enterer, and the entry, not having been lawfully made, was but a mere nullity, and therefore a subsequent *hiatus* would not have the effect of validating a junior and unauthorized entry, and therefore the subsequent extension act, though there may have existed a *hiatus* after the expiration of the previous act and the beginning of the extension act, would authorize the issuance of grant on the elder entry. In this case the court pointed out a distinction between the effect of a *hiatus* where a grant had issued upon a junior entry prior to the *hiatus.* In the latter instance it has been held (in *Williamson* v. *Throop,* 11 Humph., page 265; *Blevins* v. *Crew,* 3 Sneed, 152); that the junior entry was made good by the hiatus. The court in the Henegar Case called attention to the fact that both the entries and the grants in those cases bore dates prior to the hiatus. The court said:

"The grants may well be considered to have been the act of the State, while the entry was but the unauthorized act of the enterer."

In the Henegar Case the entry was made prior to the *hiatus,* but the grant issued subsequent thereto. With respect to that situation, the court said:

"These previous entries were unlawfully made, and were mere nullities. Did the subsequent *hiatus* have the effect of validating these junior and unauthorized entries, and thereby vest such interest in Matthews & Co. [who claimed under the junior entries] as could not be lawfully divested by the subsequent act authorizing the issuance of grants

upon entries which had become ineffective by reason of the chasm?"

But, although we might think the reasoning upon which the argument proceeds that, where a grant is issued upon a junior entry prior to the *hiatus,* life is brought into the grant thereby, the grant having been issued by the State, is unsatisfactory, nevertheless the law has been thus declared, not only in cases prior to *Henegar* v. *Matthews,* but in the subsequent case of *Sheafer* v. *Mitchell,* 109 Tenn., 181, 71 S. W., 86. In that case there was a *hiatus* in the extension acts which separated the elder entries from the grants issued thereon. Prior to the *hiatus* a grant had issued based upon a junior entry, and it was held that this grant conferred the better title. The court in that case reviewed the various decisions on the subject, including that of *Henegar* v. *Matthews.* The court said:

"We think the weight of authority is clearly to the effect that, where the younger entry is made, and the elder grant is issued upon it before the *hiatus,* such title will prevail over an elder entry and a younger grant where the latter is issued after the hiatus."

The principle upon which the decision is based is stated in *Williamson* v. *Throop,* 11 Humph., 267, as follows:

"The State sells the land to two individuals, but the first purchaser fails to perform the conditions, within the time required by law, upon which he is to have a title, and he forfeits his claim. Immediately upon such forfeiture, the title vests in the younger claimant. Now the State cannot afterwards, by extending the time for performing such conditions, take away the title that has so vested."

It results therefore that, by reason of the *hiatus* between the defendants' entry and grant, the State's grant

issued to Peet prior to this *hiatus* carried the title to Peet, to all the land described as being conveyed thereby.

But the complainants cannot take advantage of this, because they do not own nor have any claim of title under the Peet grant, and, as we have seen, under no other grant. The complainants can only recover because they own the land—not because the defendants do not own it. The complainants do not claim to have any title papers connecting them with the grantee under this particular Peet grant. The complainants set out the source of their title in an amended bill wherein they say:

"Complainants further charge and aver that their title to the land hereinbefore described is based upon Morgan county entry No. 2050. Grant 27310 issued to Thomas B. Eastland on December 25, 1838, and likewise upon Morgan county entry No. 2052. Grant No. 22313 issued to the said Eastland on December 27, 1838, and also upon Morgan county entry No. 2151. Grant No. 22289 issued to Stephen B. Peet December 22, 1838, covering the larger portion of said entry No. 2050, grant 22310 aforesaid.".

The Peet grant now under discussion is No. 22291, based under entry No. 2152.

The contention of the complainants with respect to this grant is that they are entitled to recover under it, because, in a litigation between the complainants and the holder or claimants under the Peet grant, it was adjudged and decreed that the complainants' grants, being those based upon entries Nos. 2050 and 2052, were superior to the Peet grant which was canceled and removed as a cloud upon the complainants' title. The novel and curious thing about this contention is that the complainants would

take this particular land away from the defendants because the complainants had secured an adjudication against other parties that the particular title now asserted to be superior to that of the defendants was inferior to that under which the complainants claim and which indeed is inferior to that of the defendants. In other words, they say that the superior title to this land has been declared to be inferior to another title which is still inferior to that of the defendants, because the title inferior to complainants is superior to that of the defendants.

Of course, the defendants, not being parties to that suit, are not bound by that adjudication. Although it now appears in this record that the Peet title is superior to that of the defendants, that title has been canceled and removed so far as complainants are concerned, and they are left to stand upon their own title, which we find to be inferior to that of the defendants. No recovery in favor of complainants can be based upon this process of reasoning. We must admit its novelty, and it might be deemed ingenious were it not so manifestly unsound.

In no way have the complainants shown themselves to be the owner of this land. The decree of the chancellor dismissing the bill must therefore be affirmed.