Joe E. JOHNSON, III, et al.,
Plaintiffs-Appellants,

v.

CITY OF MT. PLEASANT, Tennessee, et al., Defendants-Appellees.

Court of Appeals of Tennessee, Western Section, at Nashville.

Dec. 24, 1985.

Application for Permission to Appeal Denied April 28, 1986.

Fred E. Cowden, Jr., Nashville, for plaintiffs-appellants.

Thomas W. Hardin, Columbia, for defendants-appellees.

CRAWFORD, Judge.

Plaintiffs-appellants, Joe E. Johnson, III, and Nan J. Chunn, brought suit seeking the recovery of certain real property from defendant City of Mt. Pleasant, Tennessee, and other defendants. From a judgment on an adverse jury verdict, plaintiffs-appellants appeal.

On July 10, 1950, defendant City of Mt. Pleasant, acquired 1.6 acres of land by a quit claim deed from International Minerals and Chemical Corporation. The land was bounded on the north by land owned by plaintiffs' predecessors in title and to the east it was bounded by Sugar Creek and on the west it was bounded by the L & N Railroad. The City constructed a sewage treatment plant on the 1.6 acres and surrounded the property with a fence. There is no evidence in the record that the City had the property surveyed prior to the construction of the sewage treatment plant. In 1969, the City made additional improvements to the sewage treatment plant and moved the fence so that it occupied 40,-632.1 square feet of property in dispute. Again, there is no evidence that the City had the property surveyed prior to the fence being moved. In 1977, plaintiffs acquired property by deed which was bordered on the south by the property on which the sewage treatment plant was built. In 1978, the City built a new sewage treatment plant and constructed an intercepter line across certain property claimed by plaintiffs in order to route the sewage from the City. On July 17, 1979, plaintiffs advised the City that the intercepter line was more than likely on their property. Plaintiffs employed a surveyor to establish the common boundary line between their property and the City's property.

On September 11, 1979, the City leased the old sewage treatment plant to the defendant Tennessee Oil and Refining. Plaintiffs initially filed an inverse condemnation suit against the City alleging that the municipality had constructed a sewer line across their property and seeking money damages. Before defendants filed an answer plaintiffs amended their complaint and alleged: that in 1950 the City had taken a portion of the property then owned by plaintiffs' predecessors in title without condemnation of the same for the purpose of constructing the first sewage plant; that the City had ceased using the property as a sewage treatment plant and had leased the same to the defendant Tennessee Oil and Refining for purposes other than sewage treatment; that the cessation of the use of the property for sewage and leasing the

same to the defendant Tennessee Oil and Refining, constituted an abandonment of the property; and that upon the abandonment of the property the plaintiffs became entitled to possession of the property and to the rents and profits derived from the lease of the property by the City. On November 23, 1983, the trial court granted summary judgment in favor of the defendant City holding that the City's possession of a certain portion of the property and the enclosure of the same with a fence in 1950 and the failure of the plaintiffs' predecessors in title to institute suit established fee simple title to the property in the City under the doctrine of adverse possession.

On November 28, 1983, plaintiffs filed a second amended complaint alleging that the City had expanded further into the plaintiffs' property in 1969 and that the plaintiffs were entitled to possession of at least that portion of the property acquired by the City in 1969 together with certain property outside the fence. At the conclusion of all the proof, plaintiffs moved the court to instruct the jury that the boundary line was located along the line as established by the surveys prepared by plaintiffs' surveyor, Bill Richardson. The court refused to so instruct the jury and submitted the question concerning the location of the boundary line to the jury. The jury determined that the boundary line between plaintiffs' property and the defendant City's property was located along the fence line as established by the City in 1969 and the trial judge dismissed the suit.

On this appeal, plaintiffs present four issues for review:

1. Where the boundary line in dispute is established by a surveyor, an expert witness, and no evidence to the contrary is introduced, the court should instruct the jury that the boundary line is located at the point established by the surveyor.

2. A municipality which takes property for public purposes without condemning the same acquires only an illegally obtained possessory right to the property and upon the cessation of the use of the property for the purpose for which the property was originally taken an abandonment occurs and the rights to the property revert to the landowner or his successors in title.

3. A municipality which takes property for a public purpose without condemning the same acquires only an easement to the property.

4. The adverse possession statutes of the State of Tennessee cannot apply to a governmental entity which acquires property for public purpose without condemning the same since the landowner or his successors in title have no right to eject' the municipality from the property and can only regain possession of the property when the public use for which the property was originally acquired ceases.

 Plaintiffs' suit for recovery of the property from the City was an action in ejectment. *See* T.C.A. § 29–15–102 (1980). If he is to succeed, the complainant in an ejectment action must show that he has both legal title and a right to immediate possession. *Brier Hill Collieries v. Gernt,* 131 Tenn. 542, 175 S.W. 560 (1914); *see Bertha v. Smith,* 26 Tenn.App. 619, 175 S.W.2d 41 (1943). The burden of proof is upon complainant in an action for ejectment to establish his title and his right of possession. *Bertha v. Smith, supra.* The complainant must prove that he has a perfect title to recover even against the defendant who has no title or who is a trespasser. *Hubbard v. Godfrey,* 100 Tenn. 150, 47 S.W. 81 (1898); *Lowry v. Whitehead,* 103 Tenn. 396, 53 S.W. 731 (1899); *Davidson v. Foley,* 57 Tenn.App. 22, 414 S.W.2d 123 (1966). The complainant in an ejectment suit must establish title by deraigning title to a common source under which both parties claim or by seven years adverse possession under a registered color of title or by 20 years actual adverse possession. *See Harris v. Buchignani,* 199 Tenn. 105, 285 S.W.2d 108 (1955); *Davidson v. Foley, supra; Atkinson v. Atkinson,* 23 Tenn.App. 269, 130 S.W.2d 157 (1939). The reason underlying the rule forbidding either party to deny the common source of title is that one cannot dispute

the title under which he claims. *Scales v. James*, 9 Tenn.App. 306 (1928). In ejectment the complainant must recover on the strength of his own title and cannot rely on the weakness of his adversary's title. *Hilton v. Anderson*, 149 Tenn. 622, 261 S.W. 984 (1923); *Tipton v. Smith*, 593 S.W.2d 298 (Tenn.App.1979); *Bertha v. Smith, supra*.

We will now consider the issues:

1. Where the boundary line in dispute is established by a surveyor, an expert witness, and no evidence to the contrary is introduced, the court should instruct the jury that the boundary line is located at the point established by the surveyor.

■ Plaintiffs contend that the boundary line was established by their expert witness, Richardson, that no evidence to the contrary was introduced and thus that the court should have instructed the jury that the boundary line is located at the point established by Richardson. Defendant City contends that the record contains additional evidence regarding the location of the boundary line so that reasonable minds could differ as to the location of said boundary line. First the City notes that Joe E. Johnson, Jr., plaintiffs' predecessor in title testified that he did not know where the boundary line was and that he never had the property surveyed. Second, the City contends that plaintiffs' deed recites as their south boundary: "bounded by the City." Third, the City contends that the engineering plat prepared by the engineering firm of Barge, Waggoner, Sumner and Cannon purports a boundary line supportive of the jury's verdict. Fourth, the City maintains that the jury's verdict is supported by the testimony of Rochester Porter, a waste water plant employee since 1959, who testified that until 1970 there was a tree line on the north side of the sewage treatment plant beyond the fence. Mr. Porter testified that this tree line was on the property of plaintiffs' predecessors in title. Porter also testified that there was a piece of railroad railing in the ground at the end of the tree line near Sugar Creek. Finally, the City contends

that its warranty deed and predecessors' deeds were admitted into evidence and are further evidence of the location of the boundary line.

Richardson testified that the boundary line that separates plaintiffs' property from the City's property was located some distance within the fence surrounding the old sewage treatment plant. As to the City's assertions that there is other evidence in the record as to the location of the boundary line, the fact that plaintiff's predecessor in title did not have the property surveyed and did not know where the boundary line was located does not constitute other evidence contradictory to Richardson's testimony. Likewise, it is undisputed that the south boundary of plaintiffs' property was "bounded by the City" and the fact that plaintiffs' deed recites that their south boundary is "bounded by the City" does not constitute other evidence contradictory to Richardson's testimony. Steven Bigalow, an engineer in the firm of Barge, Waggoner, Sumner and Cannon, who was involved with the improvements made at the City's sewer plant in 1969, testified that a plat drawn by Barge, Waggoner, Sumner and Cannon showing a boundary line that runs along the fence line was not a survey of the property line and that there was no survey made concerning the property line. Bigalow testified that he had no information to indicate that the boundary line as established by Richardson was incorrect. We also do not consider Porter's testimony to be contradictory to Richardson's testimony. No witness, including Porter, testified that the tree line and piece of railroad railing at the end of the tree line constituted a boundary line. Finally, we note that the fact that the city's warranty deed and predecessors' deeds were admitted into evidence, without more, does not constitute evidence contradictory to Richardson's testimony. Plaintiffs' evidence deraigned title from a common source. The only testimony locating the boundary lines of both the City's property and the plaintiffs' property was from Richardson and the City did not offer any material evidence to contradict this testimony. We find no evidence to

support the jury's verdict establishing the boundary line between the plaintiffs' and the City's property. The trial court should have granted plaintiffs' motion for a directed verdict on this issue.

The remaining three issues will be considered together:

2. A municipality which takes property for public purposes without condemning the same acquires only an illegally obtained possessory right to the property, and upon the cessation of the use of the property for the purpose for which the property was originally taken an abandonment occurs and the rights to the property revert to the landowner or his successors in title.

3. A municipality which takes property for a public purpose without condemning the same acquires only an easement to the property.

4. The adverse possession statutes of the State of Tennessee cannot apply to a governmental entity which acquires property for public purpose without condemning the same since the landowner or his successors in title have no right to eject the municipality from the property and can only regain possession of the property when the public use for which the property was originally acquired ceases.

 Prior to the trial of this case the trial court granted the City's summary judgment motion in part and held that the City was the owner of the property enclosed in the City's fence by virtue of its exclusive, actual, adverse, continuous, open and notorious possession of the disputed property for more than 30 years. Plaintiffs do not dispute that the City had the property under fence and was so holding the property, but contend that the municipality cannot acquire title to land by adverse possession. Counsel have not cited nor has this Court found any Tennessee case directly on this point.

Plaintiffs rely on *United States v. 371.94 Acres of Land, etc. County of Obion, Tennessee,* 431 F.2d 975 (6th Cir.1970) in support of their contention that the governing authority cannot acquire title to property

by adverse possession. The court based its holding upon the landowner's right to sue, saying:

As a sovereign state, Tennessee is able to restrict the right of its citizens to bring suits against it either "in equity" or "in law." Actions "in equity"—such as, ejectment or recovery of the land and mesne profits against the State of Tennessee—were not available to the Warlicks under Tennessee law, although they would have been available had the adverse possessor been a private party. *Cox v. State,* 217 Tenn. 644, 399 S.W.2d 776 (1965); *Dickens v. Shelby County,* 178 Tenn. 305, 309, 157 S.W.2d 825, 827 (1942). Actions "at law" were available to the Warlicks only during a small portion of the twenty-year period during which the State of Tennessee was adversely possessing their land, Tennessee Constitution Article 1, § 17; Tennessee Code Annotated §§ 20–1702, 23–1423, 23–1424. The Warlick's limited remedy at law is Tennessee's "reverse condemnation statute," Tennessee Code Annotated § 23–1423, which is limited to the first "twelve (12) months after the land has been actually taken possession of, and the work of the proposed internal improvement begun." Tennessee Code Annotated § 23–1424. *Zirkle v. City of Kingston,* 217 Tenn. 210, 396 S.W.2d 356 (1965).

Plaintiffs' reliance on this case is misplaced. This holding of a federal intermediate appellate court is not binding on this Court and is an erroneous interpretation of Tennessee law.

The text writers generally agree that a governmental entity may acquire title to property by adverse possession. 2 C.J.S. *Adverse Possession* § 24, p. 674; 3 Am. Jur.2d *Adverse Possession* § 139, p. 225; 10 McQuillin, Municipal Corporations, 3d ed. § 28.15, p. 36.

After an examination of the authorities, we are constrained to hold that in Tennessee a municipality can acquire title to property by adverse possession. Plaintiffs assert that their only remedy was to proceed

by inverse condemnation and that after the expiration of one year from the taking they had lost this right. We disagree with plaintiffs' assertion. The City acquired title to the property for the sewage treatment plant by purchase, and as heretofore noted, in the construction of its fence, without the benefit of survey, enclosed a portion of plaintiffs' land. Neither plaintiffs nor their predecessors in title attempted any action for redress although Article 1, Section 21 of the Constitution of Tennessee provides:

> *No man's services or property taken without consent or compensation.* —That no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor.

In *Barron v. Memphis,* 113 Tenn. 89, 80 S.W. 832 (1904), plaintiff landowner brought suit in the nature of trespass on the case to recover damages for injuries inflicted on her property. The trial court sustained a demurrer interposed by defendant. The Supreme Court, relying on Article 1, Section 21, of the Constitution of Tennessee, found that the action of the city was a taking of the plaintiffs' property within the meaning of the constitutional provision and reversed the trial court and remanded the case for ascertainment of damages. In the case before us the adverse possession of the property enclosed by the fence under claim of ownership amounts to a taking within the provisions of Article 1 Section 21 and thus plaintiffs and their predecessors were bound to have redress if they sought it.

Plaintiffs further contend that the effect of the City's holding the property established only a possessory right or easement to the City which would revert to the plaintiffs as holders of the legal title upon abandonment of the public use of the property. Plaintiffs' argument is premised on cases arising out of the acquisition of property by the right of eminent domain.

In the case before us, the City acquired the property by purchase and constructed its fence without the benefit of a survey and included a portion of the property to which plaintiffs held legal title. The City's exercise of control and its use and occupancy of the property were such as to denote complete dominion and control. By its use of the property the City was claiming ownership of the property. The continuous adverse possession of land under a claim of right for the prescribed period has the legal effect of vesting the possessor with fee simple title. *See Preston v. Smith,* 41 Tenn.App. 222, 293 S.W.2d 51 (1955).

The record reflects that the City contended that it also acquired title to unfenced property adjacent to the fenced property by virtue of adverse possession. This issue was submitted to the jury, but in view of the jury's decision concerning the boundary line which we have heretofore held to be erroneous, the issue was not resolved, and therefore as to this part of the property the case must be remanded for further proceedings.

In summary, the judgment of the trial court on the jury verdict establishing the boundary line is reversed, and judgment is entered that plaintiffs established a deraignment of title to the property bounded as designated by surveyor Richardson. The order of the trial court granting the City summary judgment based on adverse possession to the property enclosed by fence is affirmed. The judgment of the trial court on the verdict of the jury concerning the unfenced portion of land adjacent to the fenced portion and lying between the fenced portion and the creek is reversed, and this cause is remanded for trial concerning this parcel. Costs are assessed equally between the parties.

TOMLIN and HIGHERS, JJ., concur.