FILED

December 22, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 8:59 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| Larry Thomas Schultz, | ) | Docket No.: 2015-01-0245 |
|     Employee, | ) | |
| v. | ) | State File No.: 36965-2015 |
| | ) | |
| Astec, Inc., | ) | Judge Thomas Wyatt |
|     Employer, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| Liberty Mutual Ins. Co., | ) | |
|     Insurance Carrier. | ) | |

---

## EXPEDITED HEARING ORDER FOR TEMPORARY TOTAL DISABILITY AND MEDICAL BENEFITS
### (REVIEW OF FILE ONLY)

---

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing and accompanying affidavit filed November 19, 2015, by the employee, Larry Thomas Schultz, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Schultz requests that the Court decide this matter upon a review of the file without an evidentiary hearing. Astec, Inc. (Astec), the employer, did not object to a review-of-the-file determination.[1]

This Court finds it needs no additional information to determine whether Mr. Schultz is likely to prevail at a hearing on the merits of the claim. Accordingly, pursuant to Tennessee Code Annotated section 50-6-239(d)(2) (2015), Rule 0800-02-21-.14(1)(c) of the Tennessee Compilation Rules and Regulations (2015), and Rule 7.02 of the Practices and Procedures of the Court of Workers' Compensation Claims (2015), the

---

[1] By making a determination on review of the file without an evidentiary hearing, the Court makes no decision as to the admissibility of the information submitted in the case file absent an objection from a party. The parties here did not object to the admissibility of any information in the file; therefore, the Court reviewed and considered the entire case file in making its determination.

1

Court decides this matter upon a review of the written materials.

The central legal issue at this stage of this claim is whether an infectious disease that developed in Mr. Schultz's right leg and left arm after he injured his right knee at Astec arose primarily out of and in the course and scope of employment.[2] For the reasons set forth below, the Court finds Mr. Schultz has shown he is likely to prevail at a hearing on the merits in establishing that the infectious disease that developed in his right leg and left arm arose primarily out of and in the course and scope of his employment. As such, the Court finds Mr. Schultz is entitled to the temporary disability benefits, but not all the medical benefits, he seeks.

## History of Claim

Mr. Schultz is a fifty-four-year-old resident of Bradley County, Tennessee. (T.R. 1 at 1.) On May 1, 2015, he had worked more than twenty-five years as a fitter and welder at Astec's manufacturing facility in Chattanooga, Tennessee. (Ex. 14.) Mr. Schultz earned an average weekly wage of $1,583.65 during the fifty-two weeks preceding his May 1, 2015 work injury. (Ex. 16.)

On May 1, 2015, Mr. Schultz stepped off a ladder from the second rung, spraining his right knee. (Ex. 8 at 2, 3, 23; Ex. 14.) He reported his injury to management at Astec, but continued working.[3] (Ex. 8 at 6, 9; Ex. 14.) On May 9, 2015, Mr. Schultz sought unauthorized emergency care for swelling and pain in his right knee and calf. (Ex. 7.) X-rays of Mr. Schultz's right knee revealed no bony abnormalities, but an ultrasound indicated a "large right knee effusion which appears tense." *Id.* at 12-13.

Upon learning of Mr. Schultz's need for treatment, Astec offered Mr. Schultz a panel from which he selected orthopedic surgeon, Dr. Ricky L. Hutcheson, as authorized treating physician. (Exs. 14, 17.) Mr. Schultz first saw Dr. Hutcheson on May 11, 2015. (Ex. 8 at 1.)

Mr. Schultz reported to Dr. Hutcheson that he stepped off the second step of a ladder at work on May 1, 2015, landing on his right leg. (Ex. 8 at 2.) He stated he continued working his regular job at Astec, but the pain in his right knee and calf progressively worsened and became severe over "the last couple of days." *Id.* at 2, 9. Dr. Hutcheson injected Mr. Schultz's right knee and ordered a "STAT MRI scan on his right knee." *Id.* at 10.

---

[2] Counsel for Astec confirmed that Astec does not currently dispute the right-knee injury Mr. Schultz reported on May 1, 2015. However, Astec disputes its liability for the temporary disability and medical benefits Mr. Schultz seeks because, it contends, non-compensable infectious disease and diabetes-related conditions caused the disability and treatment underlying Mr. Schultz's claim for benefits.

[3] Astec did not complete a First Report of Injury until May 11, 2015. (Ex. 14.) However, the Astec representative who completed the document wrote that Mr. Schultz gave notice of his injury on May 1, 2015, the date of injury. *Id.*

On May 12 2015, Mr. Schultz saw Dr. Hutcheson for the results of the MRI of his right knee. (Ex. 8 at 6-7.) Dr. Hutcheson recorded in his notes that the MRI revealed a partial tear of the right anterior cruciate ligament; a strain of the right medial collateral ligament; a right knee strain; a macerated, pre-existing, degenerative medial meniscus tear; a pre-existing Baker cyst; and pre-existing degenerative arthritis. *Id.* at 7. The radiologist who interpreted the MRI wrote that the ACL tear was "near-complete," that the tear in the medial meniscus was "a large complex tear of the posterior horn," and that Mr. Schultz also had a "large effusion in the knee joint and mild quadriceps and mild to moderate patella tendinosis." (Ex. 9.) Dr. Hutcheson released Mr. Schultz to return to "desk or sitting-type work" and ordered physical therapy. (Ex. 8 at 8, 14, 15.)

When Mr. Schultz arrived at Dr. Hutcheson's office to begin physical therapy on May 19, 2015, he fell while exiting his car, landing on his right knee. (Ex. 8 at 3-4.) Personnel in Dr. Hutcheson's office assisted Mr. Schultz from the parking lot by wheelchair. *Id.* at 3. Mr. Shultz reported that the pain in his right knee increased because of the fall, but x-rays revealed no acute bony pathology. *Id.* at 3-4.

On May 21, 2015, Mr. Schultz reported to his therapist that his right knee "has been 'killing him'" when he ambulated. (Ex. 8 at 22.) Mr. Schultz also reported significant pain in his left wrist that he associated with the use of crutches designed for a shorter person. *Id.* at 21-22. A May 28 physical therapy note indicated Mr. Schultz's right calf had gotten "more red and swollen." *Id.* The session ended early because Mr. Schultz became sweaty and nauseated while performing his therapy. *Id.*

Mr. Schultz returned the next day, at which time he became dizzy while performing therapy. (Ex. 8 at 20.) The physical therapist took his blood pressure, which revealed a reading of 85/53. *Id.* On June 1, 2015, the physical therapist noticed swelling and blisters on Mr. Schultz's right lower extremity. (Ex. 8 at 19.) The therapist called Mr. Schultz after the session to check on him, but Mr. Schultz was too ill to get out of bed to come to the telephone. *Id.*

Later that day, Mr. Schultz sought emergency treatment at Erlanger Hospital for swelling, weeping, and drainage in his right leg. (Ex. 10 at 34.) He also had erythema, or redness of the skin, in the area of his left wrist affected by his use of the too-short crutches. *Id.* at 35. Erlanger's initial triage notes described Mr. Schultz's problem as a "diabetic leg wound." *Id.* at 34.[4] However, after Mr. Schultz underwent diagnostic testing and evaluation by numerous specialists, the physicians who treated him through the Erlanger emergency department diagnosed his condition as "necrotizing fasciitis and large wound infection [of the right] leg." *Id.* at 35. The emergency records indicated

---

[4] The radiologists who interpreted the diagnostic tests administered through the Erlanger emergency department on June 2, 2015, listed "diabetic leg wound" as the "admit diagnosis." (Ex. 11 at 47-54.)

3

Mr. Schultz's condition was of such severity "that the absence of immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy; serious impairment to bodily function; or serious dysfunction of a body organ or part." *Id.*

Mr. Schultz underwent three emergent surgeries at Erlanger to treat the necrotizing fasciitis in his right leg and left arm. (Ex. 11 at 1-8.) Dr. Darren Hunt surgically debrided necrotized skin, subcutaneous tissue, muscle and fascia from Mr. Schultz's right leg. (Ex. 11 at 4-5.) Dr. Hunt's post-operative diagnosis was "necrotizing acute soft tissue infection of the right lower extremity." *Id.* Dr. Peter Nowotarski, a trauma surgeon, performed an arthrocentesis and superomedial knee joint arthrotomy[5] on Mr. Schultz's right knee. (Ex. 11 at 6-8.) Dr. Nowotarski's post-surgical diagnosis was "[e]xtensive necrotizing skin and soft tissue infection of the right calf, and right knee septic arthritis." *Id.* at 6. Dr. Marshall Jemison, a hand surgeon, performed an incision and drainage procedure, as well as an arthrotomy, to Mr. Schultz's left wrist and hand. (Ex. 11 at 1-3.) This surgery included retraction of arteries, muscles, and tendons in Mr. Schultz's left wrist and hand. *Id.* Dr. Jemison diagnosed deep abscesses in the left wrist and hand. *Id.*

Mr. Schultz remained hospitalized until June 23, 2015, including more than a week in the intensive care unit. (Ex. 11 at 36-38.) In total, Mr. Schultz underwent eighteen surgeries to treat the necrotizing infection of his left arm and right leg. *Id.* at 19-35; Ex. 10 at 20-30. In the discharge summary, Dr. Hunt listed necrotizing right lower extremity fasciitis, left forearm and hand abscess, and septic right knee as the first three diagnoses listed under the heading "Discharge Diagnoses." *Id.* at 36. Dr. Hunt listed diabetes mellitus, type 2, as the seventh-listed diagnosis. *Id.* While the "Hospital Course" section of the discharge summary noted Mr. Schultz had a "[p]ast medical history for type 2 diabetes poorly controlled," it did not describe any treatment provided for diabetes during Mr. Schultz's hospitalization. *Id.* at 36-38.

Astec denied Mr. Schultz's claim while he remained hospitalized at Erlanger "due to [the] work injury not being the primary cause of his ongoing symptoms." (Ex. 15.) Astec and its carrier presumably based its denial on Dr. Hutcheson's response to Liberty Mutual's June 5, 2015 letter that inquired, "do you feel that the need for treatment in his [Mr. Schultz's] right knee is more than 50% related to his pre-existing/degenerative medical condition?"[6] (Ex. 6.) Dr. Hutcheson marked the "Yes" line next to the above

---

[5] According to a medical dictionary found at Medicinenet.com, an arthrotomy is a surgical opening of a joint in the human body and an arthrocentesis is the removal of fluid and/or tissue from a joint by needle and syringe.

[6] While Liberty Mutual's causation question did not specifically reference any specific pre-existing pre-existing/degenerative condition, the paragraphs preceding the question described "evidence of degenerative issues in his right knee that were unrelated to the work injury" and "infections to his right leg and left arm as a result of a diabetic condition." (Ex. 6.)

inquiry. *Id.*

Mr. Schultz has not worked since June 1, 2015. (Ex. 1.) Astec has not paid temporary disability benefits during Mr. Schultz's period of disability, nor has it paid for the treatment Mr. Schultz received on and after June 1, 2015, when he began treatment for the necrotizing fasciitis. *Id.*

On August 20, 2015, Mr. Schultz filed a Petition for Benefit Determination seeking temporary disability and medical benefits. (T.R. at 1.) Following a failed mediation, the mediator issued a Dispute Certification Notice bringing this claim before the Court. (T.R. 2.) In support of his interlocutory request for benefits, Mr. Schultz submitted the affidavits of Drs. Darren J. Hunt, James Sizemore, and Peter Nowotarski, and the causation letter of Dr. Marshall Jemison, all of whom opined that Mr. Schultz's right-knee injury, and the infectious disease that developed in his right knee and left arm after the date of injury, arose primarily out of and in the course and scope of employment. (Ex. 2, Ex. 3, Ex. 4 and Ex. 5.) Astec submitted Dr. Hutcheson's causation opinion in support of its position.

### Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[7] *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course

---

[7] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

Tennessee Code Annotated section 50-6-102(14) (2015)[8] sets forth the "causation" definitions applicable to work injuries occurring on or after July 1, 2014. The key definitional phrases are:

- A work injury is compensable only if accidental. Tenn. Code Ann. § 50-6-102(13) (2014). The Law defines "accidental" as the causation of a condition by a specific incident, or set of incidents, identifiable by time and location of occurrence, arising primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13)(A) (2015).
- An aggravation of a pre-existing condition is compensable if the aggravating accident itself arose primarily out of and in the course and scope of employment. *Id.*
- An injury or pre-existing condition arises primarily out of and in the course and scope of employment only if the employment contributed more than fifty percent in causing it, considering all causes. Tenn. Code Ann. § 50-6-102(13)(B) (2015).
- An employee must establish causation by expert medical opinion stated to a reasonable degree of medical certainty, considering all causes, as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(13)(D) (2015).

Tennessee Code Annotated section 50-6-102(13)(E) (2015) affords the causation opinion of the authorized treating physician selected from the employer's panel a presumption of correctness. The statutory presumption is rebuttable by a preponderance of the evidence. *Id.*

Astec argues Mr. Schultz is not entitled to the requested benefits because the authorized treating physician, Dr. Hutcheson, opined that his condition did not arise primarily out of and in the course and scope of employment.[9] (T.R. 6.) It contends that the opinions of the unauthorized physicians relied on by Mr. Schultz do not rebut the presumption of correctness afforded Dr. Hutcheson's opinion. Astec contends the infectious condition that hospitalized Mr. Schultz beginning June 1, 2015, resulted from Mr. Schultz's diabetes and not his work injury.

In deciding this claim, the Court must assess whether the preponderance of the

---

[8] The 2014 codification of the Workers' Compensation Law enumerates this provision as section 50-6-102(13).

[9] Inasmuch as Astec does not deny the compensability of the May 1, 2015 injury to Mr. Schultz's right knee, the Court assumes Astec interprets Dr. Hutcheson's causation opinion to apply to Mr. Schultz's condition once the necrotizing fasciitis became his predominant medical problem.

evidence rebuts Dr. Hutcheson's presumptively-correct opinion that Mr. Schultz's injury is not work-related. In *Kirk v. Amazon.com, Inc.,* No. 2015-01-0036, 2015 TN Wrk. Comp. App. Bd. LEXIS 44, at *19 (Tenn. Workers' Comp. App. Bd. Nov. 16, 2015), the Tennessee Workers' Compensation Appeals Board cited *Bridgewater v. Adamczyk,* 421 S.W.3d 617, 627 (Tenn. App. 2013), in holding that the preponderance of the evidence lies in the finding established "with greater convincing effect" by the evidence introduced at a hearing. In view of all the evidence, the Court finds the preponderance of the evidence rebuts Dr. Hutcheson's opinion that Mr. Schultz's injury, including the necrotizing fasciitis he developed, is not work-related. Accordingly, the Court finds Mr. Schultz is entitled to the requested benefits.

In making its determination, the Court first observes that the Wage Statement filed by Astec establishes Mr. Schultz's industriousness and physical capacity to work during the year immediately preceding the date of his injury. (Ex. 16.) The Wage Statement documents that Mr. Schultz earned income in all fifty-two weeks prior to the date of his injury and, in fact, earned more than his average weekly wage of $1,583 in four of the five weeks preceding the date of injury. *Id.* Astec did not introduce evidence indicating Mr. Schultz suffered from the deleterious effects of either a right knee injury or necrotizing fasciitis prior to his May 1, 2015 work injury at Astec. Accordingly, the Court finds that Mr. Schultz is likely to prevail at a hearing on the merits in establishing that he did not suffer from impairment due to his right knee or from necrotizing fasciitis prior to May 1, 2015.

The Court next finds that Dr. Hutcheson's causation opinion is entitled to limited weight. First, Dr. Hutcheson last saw Mr. Schultz on May 19, 2015, some thirteen days before he presented to Erlanger Hospital for treatment of the necrotizing fasciitis. (Ex. 8.) Dr. Hutcheson's May 19 office note indicates he examined Mr. Schultz's right knee, including the skin of his knee, and made no notation of the blisters and open wounds with which Mr. Schultz presented at Erlanger. *Id.* at 4. In view of Dr. Hutcheson's records, the Court finds Dr. Hutcheson never saw Mr. Schultz at a time when he could assess the symptomatology of the necrotizing fasciitis.

The Court additionally assigns limited weight to Dr. Hutcheson's causation opinion because the letter from Liberty Mutual's adjuster soliciting his opinion stated foundational facts that were unsupported by the evidence introduced in this claim. For instance, the adjuster's letter stated the MRI of Mr. Schultz's right knee "showed evidence of degenerative issues in his right knee *that were unrelated to the work injury,* and a *possible* ACL tear *which was unclear if related to the work injury."* (Emphasis added.) (Ex. 6 at 1.) In truth, the radiologist who interpreted the MRI did not address the causal relationship between his findings and Mr. Schultz's work injury, thus the statement that the MRI findings were unrelated to the work injury is false. (Ex. 9.) Likewise, the radiologist did not describe a "possible ACL tear," as the adjuster describes in the letter to Dr. Hutcheson, but a "[n]ear-complete tear with some intact fibers seen."

7

*Id.* at 2.

More importantly, Liberty Mutual's letter stated that "Mr. Schultz was recently admitted to Erlanger Hospital for infections to his right leg and left arm *as a result of his diabetic condition.*" (Ex. 6 at 1.) A review of the Erlanger records indicate that, although the initial emergency room records stated that Mr. Schultz had a "diabetic leg wound" (Ex. 10 at 34; Ex. 11 at 47-54), the treating physicians determined that Mr. Schultz's hospitalization, including the multiple surgeries he eventually underwent, was caused by necrotizing fasciitis. (Ex. 11 at 1-8; 36-38.) Accordingly, Liberty Mutual's letter provided Dr. Hutcheson an inaccurate characterization of what the medical records documented pertaining to the conditions in Mr. Schultz's right leg and left arm.

In *Bearden v. Memphis Dinettes, Inc.,* 690 S.W.2d 862, 868 (Tenn. 1984), the Supreme Court held that hypothetical questions seeking expert opinion evidence "are improper and of no value when they assume facts not supported by the evidence." In view of the fact the letter soliciting Dr. Hutcheson's causation opinion contains foundational statements of fact that are unsupported by the evidence, the Court affords Dr. Hutcheson's causation opinion little weight.

Finally, the Court gives Dr. Hutcheson's opinion little weight because the adjuster only asked him to address whether degenerative/pre-existing conditions caused Mr. Schultz's need for treatment. (Ex. 6 at 1.) Astec introduced no evidence that Mr. Schultz suffered from necrotizing fasciitis prior to the May 1, 2015 date of injury, nor that the condition was caused by Mr. Schultz's diabetes. Accordingly, Dr. Hutcheson technically did not give an opinion whether Mr. Schultz's necrotizing fasciitis was work-related.

Mr. Schultz introduced the affidavits of Drs. Darren Hunt, James Sizemore, and Peter Nowotarski in support of his claim. (Ex. 2; Ex. 3; Ex. 4.) Drs. Hunt and Nowotarski performed numerous surgeries in treatment of the necrotizing fasciitis in Mr. Schultz's right leg. (Ex. 10 at 20-30; Ex. 11 at 4-8; 19-35.) Each of the above physicians opined that the injuries for which they treated Mr. Schultz, the treatment they provided, and the disablement Mr. Schultz experienced because of said injuries arose primarily out of and in the course and scope of employment. (Ex. 2; Ex. 3; Ex. 4.) Mr. Schultz also introduced a letter from Dr. Marshall Jemison, in which he opined that "the infection was hematogenously spread from the significant right lower extremity infection and therefore should be primarily related to his earlier onset [of] right lower extremity problems." (Ex. 5.)

In *Orman v. Williams-Sonoma, Inc.,* 803 S.W.2d 672, 677 (Tenn. 1991), the Supreme Court held, "it seems reasonable that the physicians having greater contact with the plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." Drs. Hunt, Sizemore, Nowotarski, and Jemison treated Mr. Schultz extensively for the necrotizing fasciitis that developed at the sites of

his work-related right-knee injury. Dr. Hutcheson did not treat, or even examine, Mr. Schultz when the necrotizing fasciitis was his predominant problem.

In view of the above, the Court accepts the causation opinions of Drs. Hunt, Sizemore, Nowotarski, and Jemison over that of Dr. Hutcheson. For the reasons discussed above, the Court specifically finds that the preponderance of the evidence rebuts the statutory presumption of correctness afforded the causation opinion of Dr. Hutcherson. Accordingly, the Court finds that Mr. Schultz will likely prevail at a hearing on the merits in establishing that his right-knee injury, and the necrotizing fasciitis that developed in his right leg and left arm thereafter, arose primarily out of and in the course and scope of employment.

*Mr. Schultz is Entitled to Temporary Total Disability Benefits.*

In *Jones v. Crencor Leasing and Sales,* No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015), the Workers' Compensation Appeals Board held that an injured worker is eligible for temporary total disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. The Board also held that an employee's return to work or attainment of maximum recovery terminates temporary total disability benefits. *Id.*

In his affidavit, Mr. Schultz averred that "I have been unable to work since June 1, 2015, because of the injuries I suffered while working for Astec." (Ex. 1 at 1.) Dr. Darren Hunt stated in his September 21, 2015 affidavit that Mr. Schultz has not attained maximum medical improvement from his work injuries and that said injuries have totally disabled him "from June 1, 2015 through the present." Doctor Peter Nowotarski opined in his October 29, 2015 affidavit that Mr. Schultz's work injuries totally disable him; that he has not attained maximum medical improvement; and, that he "will remain totally disabled until such time as I determine otherwise." (Ex. 4.). Drs. Hunt and Nowotarski, as well as Dr. James Sizemore, opine that Mr. Schwartz's disablement arose primarily out of and in the course and scope of employment. (Ex. 2 at 1; Ex. 3 at 1; Ex. 4 at 1.)

In view of the above, the Court finds Mr. Schultz will likely prevail at a hearing on the merits in establishing his entitlement to temporary total disability benefits from June 2, 2015, until he either returns to work or attains maximum medical improvement from his work-related injuries, including the necrotizing fasciitis. The Wage Statement filed by Astec indicates Mr. Schultz is entitled to receive weekly temporary total disability benefits in the maximum weekly amount, $932.80. (Ex. 16.)

*Mr. Schultz's Claim for Medical Benefits Is Denied at this Time, Except for Treatment by Dr. Ricky L. Hutcheson.*

Tennessee Code Annotated section 50-6-204(3)(A)(i) (2015) provides that the employer's obligation to provide medical care for a work-related injury is conditioned upon the employee's submission to care from a physician selected from a panel of physicians compiled by the employer. In *Buchanan v. Mission Ins. Co.,* 713 S.W.2d 654, 656 (Tenn. 1986), the Supreme Court held that section 50-6-204 imposes concomitant duties on the employer and injured worker in connection with the medical treatment provided for a work-related injury. The employer provides the injured worker treatment that is free of charge. In return, the injured worker must accept treatment from a physician selected from a panel compiled by the employer. *Id.*

In *Dorris v. INA Ins. Co.,* 764 S.W.2d 538, 541 (Tenn. 1989), the Supreme Court found that "it has long been held that the intent of Tenn. Code Ann. § 50-6-204 is for the employee to do no less than to consult with his employer before incurring [medical] expenses . . . if the employee expects the employer to pay for them." *Id.* at 541. The Supreme Court in *Dorris* held that the employer is not liable to pay for the unauthorized treatment unless the employee has a "reasonable excuse or justification" for unilaterally seeking care. *Id.* at 541.[10]

This file contains no evidence indicating what, if any, communication transpired between Mr. Schultz and Astec and/or its carrier prior to Mr. Schultz seeking emergency care at Erlanger Hospital on June 1, 2015. Neither does it contain evidence pertaining to Mr. Schultz's physical condition and the thought process he undertook prior to seeking emergent care at Erlanger on June 1, 2015. In view of the above-cited authority, the Court cannot at this time assess whether Astec must pay for the treatment Mr. Schultz received at Erlanger for the necrotizing fasciitis that developed in his right leg and left arm. Accordingly, the Court at this time denies Mr. Schultz's request for medical benefits, other than to affirm Astec's liability for the reasonable and necessary treatment of Mr. Schultz's work injury by Dr. Hutcheson.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Schultz's request for temporary disability benefits is granted. Astec and/or its carrier shall pay temporary total disability benefits in the amount of $932.80 per week. Astec and/or its carrier shall pay in a lump sum past-due temporary total disability benefits accruing from June 2, 2015, until the date of the entry of this order. Astec and/or its carrier shall pay prospective temporary total disability benefits until Mr. Schultz returns to work or attains maximum medical

---

[10] The Court knows of no authority indicating that the 2013 reforms to the Workers' Compensation Law modified the principles set forth in *Buchanan v. Mission Ins. Co.* and *Dorris, supra.*

improvement from his work-related injuries, including the necrotizing fasciitis in his right leg and left arm.

2. Mr. Schultz's request for medical benefits is denied at this time, other than Astec's and/or its carrier's obligation to pay authorized reasonable and necessary medical treatment of Mr. Schultz's work-related injury by Dr. Ricky L. Hutcheson.

3. This matter is set for an Initial (Scheduling) Hearing on **Thursday, February 25, 2016, at 9:00 a.m. Eastern Time.**

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 22nd day of December, 2015.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims. You must call 855-747-1721 (toll-free) or 615-741-3061 to participate at 9:00 a.m. Eastern Time on February 25, 2016.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

The Court reviewed the following documents and designates these documents as the Technical Record:

1. Petition for Benefit Determination (PBD), filed August 20, 2015;
2. Dispute Certification Notice (DCN), filed September 29, 2015;
3. Mr. Schultz's additions to the DCN, filed September 29, 2015;
4. Astec's Position Statement (with accompanying documentation), filed September 29, 2015;
5. Request for Expedited Hearing (REH), filed November 19, 2015; and
6. Astec's On the Record Review Position Statement (with accompanying documentation), filed November 25, 2015.

The Court reviewed the following documents in reaching its decision and designates the documents as Exhibits solely for ease of reference by the Court:

1. Affidavit of Larry Thomas Schultz;
2. Affidavit of Dr. Darren J. Hunt;
3. Affidavit of Dr. James Sizemore;
4. Affidavit of Dr. Peter Nowotarski;
5. Letter of Dr. Marshall Jemison;
6. Dr. Ricky Hutcheson's June 8, 2015 response to Paul C. Ludlow's June 5, 2015 causation questionnaire (found at pages 2 and 3 of Clerk's file entry entitled "Documents in Support of Employer's Position Statement");
7. Records of Skyridge Medical Center;
8. Records of Tennessee Valley Bone & Joint/Dr. Ricky L. Hutcheson;[11]
9. Records of Cleveland Imaging;
10. Records of Erlanger Health System, part 1 (48 pages);
11. Records of Erlanger Health System, part 2 (54 pages);[12]
12. Records of Hayes Hand Center/Dr. Marshall Jemison;
13. Medical Certifications;
14. First Report of Injury (found at T.R. 4 at 5);
15. Notice of Denial of Claim for Compensation (found at T.R. 4 at 6);
16. Wage Statement (found at T.R. 4 at 7);
17. Choice of Physician form (found at T.R. 4 at 8); and
18. FMLA paperwork.

---

[11] The records designated as an exhibit are those entered by the Clerk on September 30, 2015. The Court did not designate as exhibits other compilations of these records attached to position statements filed by Astec.

[12] The records designated as Exhibits 10 and 11 are those entered by the Clerk on September 30, 2015. The Court did not designate as exhibits partial compilation of these records attached to position statements filed by Astec.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order For Temporary Total Disability and Medical Benefits was sent to the following recipients by the following methods of service on this the 22nd day of December, 2015.

| Name | Certified Mail | Via Email | Service sent to: |
|---|---|---|---|
| Brent Burks, Attorney | | X | brent@mcmahonlawfirm.com |
| Scott Davis and Charles Gilbreath, Attorneys | | X | Sdavis@noogalaw.com;cgilbreath @noogalaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

14